JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Dedrich Whitley appeals from his convictions after a jury trial for felonious assault, aggravated robbery, and grand theft of a motor vehicle, all with firearm specifications, and, further, from the sentences imposed for those convictions.
 {¶ 2} Appellant presents assignments of error in which he initially asserts his convictions are supported by neither sufficient evidence nor the weight of the evidence. Additionally, he claims the trial court did not comply with statutory requirements in ordering some of the sentences to be served consecutively.
 {¶ 3} Following a review of the record, however, this court finds no merit to appellant's assignments of error. Consequently, appellant's convictions and sentences are affirmed.
 {¶ 4} Appellant's convictions result from an incident that occurred in the early morning hours of December 28, 2002. The victim, a woman in her late 20s, earlier that night had attended an Alcoholics Anonymous meeting at a church in the Tremont neighborhood of Cleveland. After the meeting, her father had come for her and then had taken her and a male she knew only by the name of Mark to eat at an "all-night" restaurant.
 {¶ 5} The victim told her father she wanted to retrieve something from her nearby residence and requested to borrow his car, a 2001 Ford Taurus, for the purpose. When he acquiesced, she left with Mark. The victim's father thereafter obtained a ride home from an acquaintance who also was at the restaurant that night.
 {¶ 6} The victim proceeded to her residence with Mark. Later, the two drove to his home "around the corner;" the victim discovered to her dismay they were "in the projects," a more dangerous area of the neighborhood. Nevertheless, she accompanied Mark to an apartment, but when he left her there alone for a time, she decided to return to her father's car.
 {¶ 7} As she approached the well-lit parking lot, she noticed three men loitering at a nearby building. One of them walked toward her. He was thinner than the others and wore his hair in "cornrow" braids.
 {¶ 8} The man came close to the victim with his right hand in the pocket of his sweatshirt as if he were carrying a weapon. He asked her if she was a police officer. The victim stared at the man whom she later identified as appellant. She responded, "No," but followed her answer with the question, "Are you a robber?" Appellant replied affirmatively while pulling out a handgun.
 {¶ 9} Although he ordered her to give him the keys to the car, the victim resisted. She received a stunning blow from the weapon to her head, which sent her to the ground and caused her to release them. Appellant grabbed the keys.
 {¶ 10} However, when he attempted to drive away, the car's tires simply spun in the snow. Appellant opened the driver's door in order to push with his left leg. The victim took the opportunity to reach for the keys as they hung in the ignition. Her action angered appellant. During the ensuing struggle, he viciously hit and kicked her several more times until her resistance evaporated. He then regained the keys, freed the car from the snow, and drove out of the lot.
 {¶ 11} Once alone, the victim, bloodied and bruised, searched the snow to discover her father's cellular telephone. She summoned aid. Within a few minutes, an EMS unit arrived at her location and the police were notified of the incident. The victim still was speaking on the telephone when she observed her father's car travel past the parking lot in a southbound direction.
 {¶ 12} One of the police cars that received the radio dispatch about the incident was close to the location. The officers, Borders and Torres, went to intercept the stolen vehicle. They spotted it just as it had stopped at a single-story apartment building.
 {¶ 13} As Borders drove the patrol car toward the Taurus, Torres saw a slightly-built man emerge from the driver's seat. Torres later identified the man as appellant. Torres exited the patrol car just as appellant began to walk toward the building where two "stockier" men stood. When Torres called out for appellant to halt so the officers could speak with him, he instead "immediately took off running." The others also ran.
 {¶ 14} Torres pursued the men while Borders parked and followed. By the time Borders reached his partner, Torres informed him the men had entered one of the apartments. Torres remained at the front while Borders went to the rear of the building.
 {¶ 15} Subsequently, no one emerged despite the officers' demands; therefore, the SWAT team was summoned. It took some time for appellant and the others to be placed under arrest. Borders had placed himself in a position to insure none of the suspects escaped. Appellant, however, eventually was removed from the adjacent apartment rather than the one in which the two other men were discovered.
 {¶ 16} The EMS technicians during this time had treated the victim and other police officers had arrived. Since the victim's injuries, while severe, were not life-threatening, she remained at the scene until the suspects were secured. When the three suspects were presented to her for a "cold stand," she became "hysterical" at the sight of appellant, and positively identified him as her attacker.
 {¶ 17} Appellant ultimately was indicted on three counts as a result of the incident, charged with felonious assault, aggravated robbery, and grand theft of a motor vehicle; each count contained two firearm specifications. The jury convicted appellant on all counts. After obtaining a presentence report, the trial court sentenced appellant to serve a term of three years on the firearm specifications prior to and consecutive with consecutive terms of six and seven years, respectively, for felonious assault and aggravated robbery. Appellant received a concurrent term of one year on the remaining count.
 {¶ 18} Appellant presents the following three assignments of error:
 {¶ 19} "I. The trial court erred in denying appellant's motion for acquittal of the charges when the state failed to present sufficient evidence to sustain a conviction.
 {¶ 20} "II. Appellant's convictions are against the manifest weight of the evidence.
 {¶ 21} "III. The trial court erred by ordering consecutive sentences without making the appropriate findings."
 {¶ 22} In general terms, appellant argues his convictions are supported by neither sufficient evidence nor the weight of the evidence presented at trial. He therefore contends that the trial court should have granted his collective motion for acquittal and that this court should reverse his convictions. Appellant's argument is rejected.
 {¶ 23} Pursuant to Crim.R. 29(A), a trial court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether the material elements of a crime have been proven beyond a reasonable doubt. State v. Bridgeman (1978),55 Ohio St.2d 261. The evidence must be viewed in a light most favorable to the prosecution. State v. Dennis, 79 Ohio St.3d 421, 430,1997-Ohio-372.
 {¶ 24} With regard to an appellate court's function in reviewing the weight of the evidence, it must be determined from the entire record that in resolving conflicts in the evidence, the jury "clearly lost its way" and created "a manifest miscarriage of justice;" cases in which this occurs are "exceptional." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52. Thus, this court must remain mindful that the weight of the evidence and the credibility of the witnesses are matters primarily reserved for the jury. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 25} In this case, the victim testified that she was in close proximity to her attacker during the entire episode. She positively identified appellant both at the scene and in court during trial. The victim testified appellant brandished a gun, demanded the keys to the car, and then took the keys by force when she resisted. Before fleeing in the car, appellant struck her with the gun and kicked her several times, causing her to sustain head lacerations, a concussion, and body contusions. Her testimony constituted sufficient evidence to establish appellant committed felonious assault, aggravated robbery, and grand theft of a motor vehicle, all with firearm specifications. State v.Anderson (Oct. 14, 1993), Cuyahoga App. No. 63474; State v.Gedson (July 9, 1998), Cuyahoga App. No. 73034.
 {¶ 26} Moreover, despite appellant's suggestion that the victim's testimony was unreliable, it was corroborated by the testimony of the other witnesses and the medical records. The EMS technician stated when he arrived at the scene he observed the victim was upset, disheveled, and wet from lying in the snow. He treated the victim's bleeding head lacerations, then waited with her in the unit until the suspects were apprehended. The parking lot was well lit. The victim not only positively identified appellant as her assailant, but reacted in hysterical fear when she saw him.
 {¶ 27} Similarly, Borders and Torres saw the stolen vehicle within minutes of the radio dispatch and stopped to see appellant emerge from the driver's side. Torres was in pursuit when appellant fled into an apartment. Appellant later was removed from an adjacent apartment in the same building; Borders explained this discrepancy by indicating that, although he quickly circled to the rear of the building while Torres took the front, appellant in the meantime may have used the back doors to separate himself from the other two men.
 {¶ 28} Appellant's convictions, therefore, also find support in the weight of the evidence. State v. Anderson, supra.
 {¶ 29} Accordingly, appellant's first two assignments of error are overruled.
 {¶ 30} Appellant argues in his third assignment of error that the trial court failed to make the necessary findings before ordering him to serve consecutive sentences for his convictions for felonious assault and aggravated robbery. This argument also lacks merit.
 {¶ 31} R.C. 2929.14(E)(4) directs the trial court to make three findings in order to justify the imposition of consecutive sentences. In this case, the trial court complied with the statute's requirements by stating: 1) the terms were "necessary to protect the public, to punish the offender"; 2) the terms were "not disproportionate to the conduct * * * in this case"; and, 3) the "harm was so great, unusual that a single term d[id] not adequately reflect the seriousness of [appellant]'s conduct * * *."
 {¶ 32} Additionally, the trial court complied with R.C.2929.19(B)(2)(c) by giving its reasons for selecting consecutive terms: appellant caused serious physical harm to the victim by striking her during the two separate episodes of the entire incident, which was of a lengthy duration and subjected the victim to "pure terror," and, since appellant had "been to prison before, quite frankly[, he] should have known better." State v.Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, State v. Corrigan,
Cuyahoga App. No. 83088, 2004-Ohio-4346.
 {¶ 33} The trial court thus complied with its duties in pronouncing sentence upon appellant. Appellant's third assignment of error, therefore, also is overruled.
 {¶ 34} Appellant's convictions and sentences are affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Calabrese, Jr., J. and Cooney, P.J. concur.